

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BRANDON CALLIER, <br><br> Plaintiff, <br><br> v. <br><br> MCCARTHY LAW, PLC, an Arizona Professional Limited Liability Company, **KEVIN MCCARTHY, GOT LEADS 365, LLC,** a Delaware Limited Liability Company, **IRSHAD HASAN, SMARTLEADS MEDIA, LLC,** a Florida Limited Liability Company and **MICHAEL GIANETTI** <br><br> Defendants. | § § § § § § § § § § § § § § § § § § Case # 3:21-CV-00015-DCG |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES PLAINTIFF BRANDON CALLIER with his First Amended Complaint herein and alleges and states as follows:

### INTRODUCTION

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, Telemarketing Sales Rule ("TSR") 16 C.F.R. § 310, et seq., § 302.053 of the Texas Business & Commerce Code and § 302.101 of the Texas Business & Commerce Code.

### JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See *Mims v Arrow Fin. Servs., LLC* 565 U.S. 368, 386-87

1

(2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil rights under the TCPA).

3. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over Defendants as Defendants conduct business in the State of Texas.

5. Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

6. Plaintiff is BRANDON CALLIER, a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

7. Defendant MCCARTHY LAW, PLC ("McCarthy Law") is a Professional Limited Liability Company organized and existing under the laws of Arizona and can be served via registered agent Kevin McCarthy, 4250 N Drinkwater Boulevard, Suite 320, Scottsdale, Arizona 85251.

8. Defendant KEVIN MCCARTHY ("McCarthy") is a natural person, resident of Arizona and Managing Partner of McCarthy Law, PLC and can be served at 4250 N Drinkwater Boulevard, Suite 320, Scottsdale, Arizona 85251.

9. Defendant GOT LEADS 365, LLC (Leads) is a Limited Liability Company organized and existing under the laws of Delaware and can be served via Chief Executive Officer Irshad Hasan at 12636 High Bluff Drive, Suite 400, San Diego, California 92130.

10. Defendant IRSHAD HASAN ("Hasan") is a natural person, and the CEO of Got Leads 365, LLC and can be served at 12636 High Bluff Drive, Suite 400, San Diego, California 92130.

11. Defendant SMARTLEADS MEDIA, LLC ("SmartLeads") is a Limited Liability Company organized and existing under the laws of Florida and can be served via registered agent Michael Gianetti, 14134 Bently Cir, Fort Myers, Florida 33912.

12. Defendant MICHAEL GIANETTI, is a natural person, resident of Florida, officer of SmartLeads, Media, LLC, and can be served at 14134 Bently Cir, Fort Myers, Florida 33912.

13. Defendants are "persons" as the term is defined by 47 U.S.C. § 153(39).

14. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, representatives and/or insurers.

### THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

11. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. §

3

227(b)(1)(B).

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

16. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

17. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

18. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

19. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

21. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## THE TEXAS BUSINESS AND COMMERCE CODE § 305.053

22. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

23. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

24. The Texas Business and Commerce code requires sellers to obtain a registration Certificate from the Office of the Secretary of State in order to make telephone solicitations.

5

25. The Plaintiff may seek damages under Texas law for violations of § 302.101 of up to $5000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, deposition expenses, witness fees, and attorney fees.

## FACTUAL ALLEGATIONS

26. Plaintiff has been on the Do-Not-Call Registry since December 2007.

27. Plaintiff searched the Texas Secretary of State website on May 7, 2021 and did not find a solicitation certificate on file for any of the Defendants.

28. On January 19, 2021 at 10:51 AM Plaintiff received a phone call from phone number 954-628-5930, a spoofed caller ID. Plaintiff was connected to a telemarketer after a long pause. The call disconnected.

29. On January 19, 2021 at 11:16 AM Plaintiff received a second phone call from phone number 954-628-5930 and was connected to a telemarketer. The telemarketer solicited Plaintiff for the debt relief services of Defendants by asking Plaintiff questions about his student loan debt status.

30. The telemarketer then asked the Plaintiff to hold on the line while he got his "Debt Manager." Plaintiff was then connected to Curtis LaCavera, a "Chief Engagement Paralegal" who emailed Plaintiff a credit authorization form from Curtis.lacavera@mccarthylawyer.com.

31. On January 19, 2021 at 3:23 PM Plaintiff received a third call from 954-628-5930 soliciting the legal services of Defendants.

32. Each time Plaintiff answered the phone there was a long pause before an audible "beep" and the Plaintiff was connected to a human being.

33. Plaintiff did not need, or want, Defendants' legal services, but told Mr. LaCavera he did in order to determine who was illegally soliciting the Plaintiff.

34. Defendant McCarthy identified Defendant Leads and Defendant Smartleads as the telemarketing companies that called Plaintiff and supplied Defendant McCarthy with Plaintiff's information.

35. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes and ethical practices for the solicitation of legal services.

36. Defendants and their agents and co-conspirators amassed lists of thousands of potential customers from public records, and data aggregators and then sent phone calls using artificial or prerecorded voice messages *en masse* to market their products.

37. Defendant Hasan controls and dominates Got Leads 365, LLC and entered into a contract or agreement, the terms of which included payments and compensation from McCarthy Law, PLC and Kevin McCarthy.

38. Defendant Gianetti controls and dominates SmartLeads Media, LLC and entered into a contract or agreement, the terms of which included payments and compensation from McCarthy Law, PLC and Kevin McCarthy.

39. Defendants participated in, facilitated, directed, authorized, knew of or willfully ignored the unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

40. Plaintiff never consented to receive the calls alleged herein. Plaintiff had no relationship with Defendants prior to the calls alleged herein.

41. Each and every telemarketer the Plaintiff spoke with failed to properly identify themselves and the parties they were calling on behalf of.

42. Each and every call was made without a valid Texas solicitation registration in violation of Texas Business and Commerce Code 302.101.

43. Texas Business & Commerce Code 302.101 is a strict liability statute.

44. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

45. No emergency necessitated the calls.

46. None of the defendants ever sent Mr. Callier any do-not-call policy.

47. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Mr. Callier the unsolicited calls,

48. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

## VICARIOUS LIABILITY OF THE SELLERS

49. These parties are vicariously liable under the theories of actual authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

50. The Defendant McCarthy Law is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain the Plaintiff as a client.

51. The email shows that the beneficial party who was gaining customers was Defendant McCarthy Law.

52. Defendants authorized a third-party telemarketer to generate prospective customers. Defendants hired a third-party to promote its products and services. Defendants'

integration of robocalling into its sales process was so seamless that it appeared to an outside party like Plaintiff that the third-party telemarketer was the telemarketing department of Defendant McCarthy Law.

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

53. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES AS A RESULT OF THE CALLS

54. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

55. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

56. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

57. Defendant's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

58. The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to:

- Reduced Device Storage space
- Reduced data plan usage

- Invasion of privacy
- More frequent charging of my cell phone resulting in reduced enjoyment and usage of my cell phone

### The Plaintiff's cell phone is a residential number

59. The calls were to the Plaintiff's cellular phone 915-383-4604 which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

60. 47 C.F.R. § 64.2305(b) defines a business subscriber as a subscriber to ta telephone exchange service for businesses.

61. 47 C.F.R. § 64.2305(d) defines a residential subscriber as a subscriber to a telephone Exchange that is not a business subscriber.

62. The designation when considering whether a telephone subscriber has protection under 47 U.S.C. 227(c) is not whether a phone is a cell phone or a "residential" phone. The consideration is whether a phone is a "business phone" or a "residential phone" as those are the only to subscriber designations and all phones that are not business phones have been designated as residential phones.

63. In Strange v ABC Co. the Court noted the FCC noted "[W]e believe it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the

full range of TCPA protections……….From this, the Court finds persuasive authority that plaintiffs, like Strange, who register their cell phones on the do-not-call registries are presumed to be residential subcribers.*"* *Strange v. ABC Co.* CIVIL ACTION NO. 19-1361, 2021 U.S. Dist. LEXIS 38882 *; 2021 WL 798870.

### Violations of the Texas Business and Commerce Code 305.053

64. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the defendants violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

65. The calls by the defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

### FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent.

3. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

    c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

8. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10. Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

### THIRD CLAIM FOR RELIEF

**(Violations of The Texas Business and Commerce Code 305.053)**

11. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053,** by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

14. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c).**

## FOURTH CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 302.101)

15. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

16. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without registering with the Texas Secretary of State.

17. Mr. Callier is entitled to an award of up to $5000 in statutory damages for each such violation of **Texas Business and Commerce Code 302.101** per **Texas Business and Commerce Code 302.302(a).**

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff BRANDON CALLIER prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for at least three calls;

14

    E.    An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053;

    F.    An award of $5,000 in statutory damages arising form violations of the Texas Business and Commerce code 302.101;

    G.    An award to Mr. Callier of damages, as allowed by law under the TCPA;

    H.    An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity

    I.    Such further relief as the Court deems necessary, just, and proper.

JURY TDEMAND

Plaintiff requests a trial by Jury of all claims that can be so tried.

June 7, 2021                                                    Respectfully Submitted,

*/s/ Brandon Callier*

Brandon Callier
Plaintiff. Pro Se
6336 Franklin Trail
El Paso, TX 79912

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BRANDON CALLIER,<br><br>      Plaintiff,<br>v.<br><br>MCCARTHY LAW, PLC, an Arizona Professional Limited Liability Company, and KEVIN MCCARTHY<br><br>      Defendants. | §§§§§§§§§§§§§   Case # 3:21-CV-00015-DCG |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2021, I caused a true copy of the foregoing, **PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND PLAINTIFF'S FIRST AMENDED COMPLAINT** to be served via electronic mail to all attorneys of record.

June 7, 2021             Respectfully submitted,

                   Brandon Callier
                   Plaintiff Pro Se
                   6336 Franklin Trail Drive
                   El Paso, TX 79912
                   Callier74@gmail.com